**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name  HUFF            William          T
     (Last)           (First)          (Initial)

Prisoner Number  J-94871

Institutional Address  2100 PEABODY Rd
Vacaville California 95687-6615

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

William Terry Huff
(Enter the full name of plaintiff in this action.)

vs.

Thomas L. Carey
(Enter the full name of respondent(s) or jailor in this action)

Case No. 29042  CV 07 5610 JF
(To be provided by the clerk of court)

PETITION FOR A WRIT
OF HABEAS CORPUS

(PR)

E-filing

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS       - 1 -

<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

   (a)   Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland): MERCED SUPERIOR COURT     MERCED CALIFORNIA

          Court                                Location

   (b)   Case number, if known #29042

   (c)   Date and terms of sentence April 27th 2005

   (d)   Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)     Yes _X_     No ____

        Where?

        Name of Institution: SOLANO State Prison

        Address: 2100 PEABODY RD VACAVILLE CA.

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

I) FIRST DEGREE MURDER (PEN Code § 187)

II POSSESSION OF FIREARM BY A FELON (§ 12021 SUBD.(A)(1))

III UNLAWFUL POSSESSION OF AMMUNITION (§ 12316 SUBD (B)(1))

IV UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE (HEALTH AND SAFETY CODE (§ 11377 SUBD (A)

PET. FOR WRIT OF HAB. CORPUS      - 2 -

3. Did you have any of the following?

    Arraignment:    Yes _X_   No ____

    Preliminary Hearing:    Yes _X_   No ____

    Motion to Suppress:    Yes _X_   No ____

4. How did you plead?

    Guilty _X_   Not Guilty ____   Nolo Contendere ____

    Any other plea (specify) _NOT Guilty to Count I_

5. If you went to trial, what kind of trial did you have?

    Jury _X_   Judge alone ____   Judge alone on a transcript ____

6. Did you testify at your trial?    Yes ____   No _X_

7. Did you have an attorney at the following proceedings:

    (a) Arraignment    Yes _X_   No ____

    (b) Preliminary hearing    Yes _X_   No ____

    (c) Time of plea    Yes _X_   No ____

    (d) Trial    Yes _X_   No ____

    (e) Sentencing    Yes _X_   No ____

    (f) Appeal    Yes _X_   No ____

    (g) Other post-conviction proceeding    Yes ____   No ____

8. Did you appeal your conviction?    Yes _X_   No ____

    (a) If you did, to what court(s) did you appeal?

    Court of Appeal    Yes _X_   No ____

    Year: _2005_   Result: _DENIED_

    Supreme Court of California    Yes _X_   No ____

    Year: _2006_   Result: _DENIED_

    Any other court    Yes ____   No _X_

    Year: ____   Result: ____

    (b) If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS    - 3 -

|   |   |   |
|---|---|---|
| | petition? | Yes ___ No _X_ |
| (c) | Was there an opinion? | Yes ___ No _X_ |
| (d) | Did you seek permission to file a late appeal under Rule 31(a)? | |
| | | Yes ___ No _X_ |

If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal? Yes ___ No _X_

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

(a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I. Name of Court: _____ NONE _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result: _____

II. Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS       - 4 -

   a. _____ NONE _____
   b. _____
   c. _____
   d. _____
   Result: _____ Date of Result: _____

III. Name of Court: _____

   Type of Proceeding: _____

   Grounds raised (Be brief but specific):

   a. _____ NONE _____
   b. _____
   c. _____
   d. _____
   Result: _____ Date of Result: _____

IV. Name of Court: _____

   Type of Proceeding: _____

   Grounds raised (Be brief but specific):

   a. _____ NONE _____
   b. _____
   c. _____
   d. _____
   Result: _____ Date of Result: _____

(b) Is any petition, appeal or other post-conviction proceeding now pending in any court?

   Yes _____   No_____

   Name and location of court: _____ ⊖ _____

B. GROUNDS FOR RELIEF

   State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS         - 5 -

1 need more space. Answer the same questions for each claim.

2 [Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

Claim One: **SEE ATTACHED TYPED CLAIMS FOR THIS SECTION**

Supporting Facts: _____

Claim Two: _____

Supporting Facts: _____

Claim Three: _____

Supporting Facts: _____

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

**THE COURT APPOINTED APPELATE LAWYER'S ONLY IMFORMATION WAS TAKEN FROM THE TRANSCRIPTS without ANY IMPUT FROM MYSELF**

CASE NO: 29042

Warden: Thomas L. Carey
2100 Peabody Rd
Vacaville, Ca 95696-4000
707-454-3235

1. I was told by Mr. Eisenhart, the Public Defender, that I didn't even have 2 strikes against my record and had heard that I was liable for 3 strikes; but no other prior crimes were considered violent.

2. In November 2003, my Parole Officer had already made the statement to me that he would be submitting a letter to the department for an early December release of parole. What happened to this letter?

3. (L) Alan Baum had me call him after I had initially fired him and told him to refund the $30,000 retainer to Eileen Hitchings. He asked my girlfriend Eileen to please set up a 3-way conference call so he could talk with me on April 13th 2004 between 10:00 – 11:00 am. He said, "I've done a lot of soul searching. Please let me do this case for you. I know what the DA is going to do. All this is is a political trial and I'm not going to let them do this to you."

4. (L) I made it clear to Alan over the phone that if there was going to be any possibility of receiving a life top on my sentencing that I did not want him to defend me and to return all funds to Eileen.

5. (L) Over a year later, when Alan came to see me after that phone call, he brought Angelyn Gates. We went over my case in a visiting room over a phone. At the end Alan asked what I thought of Angelyn Gates. I was under the impression that Angelyn would be working together, along with Alan, not in place of Alan.

6. I explained over again for the third time, that if in anyway they thought that I'd end up with an "L", that they are to forget everything and give Eileen Hitchings the money back and I'd get a public defender.

7. (L) Angelyn Gates had no idea what I meant by having an "L" (note: although she had been a DA at one time), so Alan Baum and I explained to her that it meant any sentencing with a life top. Angelyn assured me that no way could I get a life

top. I explained again, for the fourth time, that if in any way they thought I'd end up with anything like 25 years to life, that they are to pack their bags and go home, and give Eileen's money back. That was the last time I ever saw or heard from Alan Baum.

8. (L) On my next court date neither Alan nor Angelyn even showed up. In fact it was Angelyn's sister who came to stand in for them. At least half of my court dates other lawyers who are contracted to the County of Merced had to fill in for Alan and Angelyn because of their other cases in Texas.

9. (L) At one point during one of my court dates, neither Alan nor Angelyn even bothered to show up. After about 3 hours of waiting, the judge finally ordered a guard to go out into the hallway to find a County Defender to come in and stand in for Alan and Angelyn.

10. (L) Other than when Alan last came to see me with Angelyn Gates, Angelyn only came to talk with me one other time, after that I had no other contact with either of them. I had one visit from Angelyn's sister the same day to let me know that she would be taking their place as my attorney. But during court, it was Angelyn that came to court with me. Just as a note, Angelyn's sister was a very nice person. She even put money on my books.

11. (L) Angelyn knew that Sherry had gone around telling people that she was going to put me into a body bag, but not once did she fight to have all those people put on the stand, knowing that it would have helped my case. None of these people had any derogatory statements against me.

12. (L) I feel that there was misconduct on the part of Ms Helms and Ms Gates due to the fact that Ms Helms had been in contact with Ms Gates brother, Steve. Ms Helms made it clear she had contacted Steve on the Internet. After that happened, Ms Gates stopped objecting to anything Ms Helms did during the rest of my trial.

13. (L) Right as the jury was returning with a verdict, Ms Gates left for the airport, without even staying to hear the verdict. To this day I have not received one sheet of paper or any other contact at all from Alan or Angelyn.

14. (L) Angelyn Gates never did follow-up on anything that would have shown Sherry's violent behavior to the jury, even though it is very important because it

testifies to the most probable behavior that she had that night. Sherry's violent past history was inadmissible in court which caused undue prejudice to my case, yet all of my past was brought up in court.

15. The night that I made a call to Sonny, the time was around 11:45 p.m. He was at my place close to 12:00 midnight of the 15th. He called what I believed to be 911 as soon as he got out of his pickup and saw Sherry. He told me to drive her Dad's pickup back to her Dad's driveway. Why does the 911 call time show much later than midnight?

16. I told Angelyn that the photos of Sherry and everything around her had been moved and the blood spots were about 4 feet away from where she was when I left. The scene did not match the way things were before Sonny told me to leave the shop.

17. (Court) The judge did not allow anyone to get on the stand to explain that Sherry was known to stab men that she could not control. The judge would not allow anyone who knew of Sherry's violent behavior to testify to the jurors about her violent acts towards men and her violent behavior that she was known for. Sherry is known to have stabbed men, one named Mike, and one other was Tony Victor just to name two. How come none of the people that Sherry had expressed her violent behavior to, men or women, were ever asked to testify to the jury of just how violent she really was?

18. Double jeopardy: already served ordered time for previous & prior convictions they should not be added to present convictions as enhancements.

19. During this entire process, it was never brought to everyone's attention that my job was Night Watchman at H and H RV as well as working during the daytime. There had been numerous times that people were seen in the surrounding area as if casing the fenced in yard. My sister, Penny McFadden had noticed the night of the 14th some suspicious people along the canal bank. That's the reason why there was video surveillance in the first place. I rarely left the property. When Eileen and I left the yard a couple of times, we would come back and noticed things were stolen and that everything in the refrigerator was tainted and had to be thrown out. There was one instance when my father and I had been threatened with a gun

because they wanted some other people's property that wasn't mine to give, that's why there was a gun on the property to begin with. The VCR tape is missing from the camera that records the front door where Sherry was shot. It would show everything that happened that night. Who went into my 5th wheel and got that plastic flower and put it on the freezer door? How come Tony wanted that refrigerator door so bad, unless his fingerprints are all over it from that night?

20. The timing of events and condition of evidence (i.e. body placement) at crime scene was incorrect. When I brought this up to my lawyer who was supposed to represent me at trial, I was told to be quiet. Judge Dougherty said if I wasn't quiet, he would tape my mouth shut.

21. The Crime Scene
   a) Body had been moved: when I was told to leave by Sonny Jones instead of calling 911, he called Tony Victor. He came to the scene and subsequently, along with Sonny rifled my trailer, moved the body, took money & drugs from victim & placed the rose on the refrigerator making it look like I had done it as an insult to Sherry. (see attached letter from Tony Victor)
   b) Phone bills (H and H, Sherry's and Sonny's) should be looked at more closely as evidence of the time line was incorrect. Only parts of all phone records were ever brought out during the trial. Sonny's phone records should be looked at more closely since it's strongly believed that he called Tony Victor and went to bring him to the shop before calling 911. Since calls were made from the landline of H and H RV Repair, who else was called from that phone and was Stacy Chandler called from that phone? If yes, then was it before Sonny called 911 or after? What happened to the cordless landline phone?

22. a) Many witnesses said that she had made the statement, "He will never make his Parole. I'm going to kill him and put him in a body bag". She made the same statement to Eileen Hitchings the day of the 15th.
   b) Prior to this tragic incident, she had been told numerous times not to be on the property. When Sherry called me that night to say she was coming over, I called Eileen Hitchings, my girlfriend, and asked her to come over because I didn't want to be there alone when she arrived. She had no vehicle at the time

so was unable to. So instead, she called Sonny two times to ask him to go check things out. Then Sherry showed up on the property with 3 knives, a history of stabbing uncooperative males as well as violence on family members. Officer Sziraki had said that he'd seen her in action, she fights like a man.

23. During the trial, Angelyn told Eileen that the Judge had forbade her to mention on the witness stand that I had called her because I was worried about being alone with Sherry when she came over.

24. I pointed out to Ms Gates that the way the Ms Helms had reconstructed the crime was not even close to what really happened that night, especially the findings that Sherry had a toxic level of methamphetamine in her system. She had no answer and made no additional objections after that time and instructed me to stay quiet.

25. a) The jurors were not fully instructed on all the options and levels they could find me guilty of
b) A particular juror was seen to be conversing about the trial throughout the trial.
c) During deliberation two jurors were seen outside conversing with the general public, people other than jurors.

26. When I was arrested, I had scratches on my wrist from Sherry grabbing at my gun hand right as the gun went off. These fresh scratches were noted in the police report but not taken into account during the trial.

27. Jesse Bacom took pictures of his relatives with 3 jurors in the background. Said they were blurry and couldn't see them, but how did they know they were jurors?

28. Constitutional Rights (i.e. Freedom of Speech): A newspaper reporter for the Merced Sun Star went into the jail and conducted an interview with me on what happened the night when the tragedy occurred. The DA's office stopped the article from being printed & demanded the notes of the interview or she would be put in jail. She quit the newspaper and the article was never published.

29. Eileen Hitchings contacted Delancey Street Foundation and I received a letter to come up for an interview. We had it setup for Mr. Byrd, a retired police officer, that he would transport me for the interview. Merced County Judge said absolutely not!

30. Numerous pages were missing from the original transcripts of the court case.

31. There are many discrepancies between police reports. During my interrogation with Detective McClain he started to make a statement bringing up Sonny's name and he paused, going onto COME BACK.

32. Four days after my original interrogation, they went back to the crime scene for evidence. They were more interested in paperwork to keep me in jail than retrieving evidence There was no tape surrounding the area or anyone around to make sure the crime scene was intact. During that time everything had been removed from the property.

33. If I was planning on killing her, why, when there were two guns on the property, one in good working condition, and the other that was never supposed to work, would I pick up the one that didn't work?

34. Not only do I have to live with the accidental tragedy of that night, but also the loss of someone that I once loved, and defamation of my character. I've been denied my constitutional and civil rights, had to have an abundance of money that was put up for me on a lawyer who I feel did not represent me in court. . It seems that I have to live the rest of my life incarcerated for telling the truth and not running: doing my job, both day and night, minding my own business with a goal of making parole, and living a decent life as a free citizen in society. All because of misrepresentation, witnesses lying on the stand in the courts, having the truth of that night turned against me to convict me because of lack of evidence and disrespect on the DA's part to use photos of Sherry to convict me in a corrupt county. This long term DA is the same one that embezzled almost $60,000 from Merced County. He was responsible for serving alcohol to a minor who was killed later that night; had a wreck and left the scene until his blood alcohol level was no longer in question & never tested for DUI; illegal use of a county vehicle for many years. The DA Office was mysteriously burnt when he was relieved of his duties. He is now living in another county as an advisor making $150,000/year. No wrong doings on his part? TRUTH, HONOR AND JUSTICE, what this Country stands for – *what happened to my rights?*

case no: 29042

Thursday 4-7-05

Dear Eileen,
Hi Sweetheart.
I love you and I hope that you are doing fine. not verymuch is going on with me, I'm just stressed out over everything to do with my case. I was just going over those pictures from the trial and theirs cops hade moved stuff around and then took pictures. even the ones of Sherry are not right because she hade been moved also. Eileen it just is not right for them to change the thourth around like they have. enyway the more I think about it the more I belere that something went on while Sonny was ther, because when he told me to lere he was pushing buttons on his cell phone. but on the 911 recording he is almost at the gate and saying he seen the amblonce go by. I think Sonny layed Sherry forward on her face to dig into her pockets for cash and dope. because that blood spot on the carpet Sherry never was in that spot. enyway thers some other things also like my jump suit and that blanket, I never left them were they are in the pictures. and also that silk flower. I never put that flower there. who ded? no one even asked me if I put that flower on that handle. thers alot I don't understand but I see now that me being locked up for ever is more empotant to them than the truth of what realy happend. not just me but She deserves to have the truth told of what realy happend that night.

I love you. Love Terry

P.S. →

CASE NO: 29042

②

6-10-05

"OH" I no longer have eny problem of what so ever with Tony. He wrote me a realy nice letter asking if we could just let all that happend stay in the past and forgive forget. enyway I was able to catch Hem at La Noble at dinner and we had a real entersting talk. Turns out that Sherry was with Hem in bed just befor She came over Not at Storage and also Sonny Dad call Tony to go over there. Im not going to say enything els but howcome Anaheim wanted $50 Bail for Tony not to get on the stand? OH also Sherry told Tony that She was going to go jump in my shit. enyway Tony told Sherry To not be going over to my place to fight with me. Tony told me that He fell asleep and Sherry snuck off and Sonny awoke them with that phone call from my shop. thers more but ill have to wate funtell I see you beccuse Im not going to write it in this letter. I hope I get moved soon and if I get moved will you be able to get me a TV so Im not stressing so much? send more Post Cards so I know your thinking about me beccuse Im having a real real hard time right now Eilleeeeen.

Im Missing My Baby. Forever Yours, Terry

# DELANCEY STREET FOUNDATION

600 Embarcadero   San Francisco   California 94107   (415) 957-9800

MIMI H. SILBERT, Ph.D. President / CEO

CASE NO: 29042

February 17, 2004

Mr. Terry Huff   Block #2 Cell #3
Merced County Jail
P. O. BOX 2267
Merced, CA 95344


Dear Mr. Terry Huff

Unfortunately we don't travel to that facility to do interviews, and we don't interview through the mail or over the phone.
We get hundreds of letters from around the country and wish we could travel to see everyone but of course we cant.  **You should try and get you're attorney to ask the judge if you could be transported to Delancey Street for an interview**, or if that doesn't work out you are welcome to come see us after you're released.  Even then there are no guarantees that you will be accepted.
We wish you the best of luck, and hope things work out for you.


Sincerely,

*[signature]*

Mike Quaid
Intake Coordinator


Enclosure

---

| NEW YORK | NEW MEXICO | NORTH CAROLINA | LOS ANGELES |
|---|---|---|---|
| Turk Hill Road | P.O. Box 1240 | 811 N. Elm Street | 400 N. Vermont Avenue |
| Brewster, NY | San Juan Pueblo, NM | Greensboro, NC | Los Angeles, CA |

1  List, by name and citation only, any cases that you think are close factually to yours so that they
2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning
3  of these cases:

4  _SEE ATTACHED TYPED TABLE OF_
5  _AUTHORITIES_
6  _____

7  Do you have an attorney for this petition?                Yes____   No_X_
8  If you do, give the name and address of your attorney:
9  _____-0-_____

10  WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in
11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12
13  Executed on October 31, 2007           _Terry W. Huff_
14              Date                         Signature of Petitioner

(Rev. 6/02)

PET. FOR WRIT OF HAB. CORPUS          - 7 -

# TABLE OF AUTHORITIES

## Cases

Chambers v. Mississippi (1973) 410 U.S. 284

Chapman v. California (1967) 386 U.S. 18

Davis v. Alaska (1974) 415 U.S. 308

In re Christian S (1974) 7 Cal. 4th 768

Jackson v. Virginia (1979) 443 U.S. 307

People v. Berry (1976) 18 Cal. 3d 509

People v. Berryman A (1993) 6 Cal. 4th 1048

People v. Bridgehouse (1956) 47 Cal. 2d 406

People v. Burrell-Hart (1987) 192 Cal. App. 3d 593

People v. Cuevas (1995) 12 Cal. 4th 252

People v. Flannel (1995) 25 Cal. 3d 668

People v. Hall (1964) 62 Cal. 2d 104

People v. Hernandez (1988) 47 Cal. 3d 315

People v. Johnson (1980) 26 Cal. 3d 557

People v. Mizchele (1983) 142 Cal. App. 3d 686

People v. Pena (1984) 151 Cal. App. 3d 462

People v. Penny (1955) 44 Cal. 2d 861

People v. Ramirez (1979) 91 Cal. App. 3d 132

People v. Redmond (1969) 71 Cal. 2d 745

People v. Rowland (1968) 262 Cal. App. 2d 790

People v. Searle (1917) 33 Call. App. 228

People v. Shoemaker (1982) 135 Cal. App. 3d 442

People v. Smith (1976) 249 Cal. App. 2d 395

Strickland v. Washington (1984) 466 U.S. 668

Washington v. Texas (1967) 388 U.S. 14

## Codes

Evidence Code section 210
Evidence Code section 402
Evidence Code section 1103
Evidence Code section 1103, subdivision (a)
Evidence Code section 1103, subdivision (a)(1)
Health and Safety Code section 11377 (a)
Penal Code section 187
Penal Code section 192, subdivision (b)
Penal Code section 654
Penal Code section 667.5, subdivision (b)
Penal Code section 1237, subdivision (a)
Penal Code section 12022.53 (d)
Penal Code section 12316 (b)(1)

## Instructions

CALJIC No. 7.17
CALJIC No. 8.11
CALJIC No. 8.40 (2004 revision)
CALJIC No. 844
CALJIC No. 845 (2004 revision)
CALJIC No. 8.46
CALJIC Nos. 8.42, 8.43